UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Lakes Venture, LLC,
*a Delaware limited liability company*,

        Plaintiff,

v.

Miracle Market LLC,

        Defendant.

Civ. No. 22-400 (JWB/JFD)

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

---

This matter is before the Court following a hearing on cross-motions for summary judgment held on June 5, 2023. (Doc. Nos. 44, 52.) The dispute involves a commercial lease agreement that requires the tenant to pay a percentage of real estate taxes but excludes the tenant's responsibility for "assessments" for certain improvements related to the development of the property. The material facts are undisputed. The sole issue for the Court's determination is whether tax increment financing ("TIF") is an excluded "assessment" under the lease.

## BACKGROUND

    I.    Statutory Background for TIF

The Minnesota legislature established TIF as a financing tool "to support local economic development, redevelopment, and housing development . . . using the incremental property taxes, or 'tax increments,' generated by the increased taxable value

of the new development."[1] The theory behind TIF is that partial municipal financing of development in designated underperforming areas will lead to more real estate development, translating into enhanced property values, which in turn will increase property taxes and tax revenues (increases that would not have occurred but for the development). TIF uses a portion of the increased property tax revenues resulting from the enhanced property values to pay or reimburse a portion of the real estate development costs.

TIF requires a local government to create a TIF plan stating the improvement objectives and to designate a municipal area—including one or more TIF districts within that area—that the local government wishes to improve with tax revenues earmarked to finance development. Minn. Stat. § 469.175, subd. 1. The local government must make a finding that an increased market value from the proposed project "could [not] reasonably be expected to occur" but for TIF. *Id.*, subd. 3(b)(2). Once a local government creates a TIF plan and designates a TIF district, it considers applications for specific development projects within that TIF district consistent with the TIF plan.

II.   Calculating TIF

What TIF means to a local government taxing authority is different from its meaning to a typical corporate or individual taxpayer.

When local government calculates annual available TIF funds, the county auditor first calculates and certifies the original net tax capacity in the TIF district. The original

---

[1] Office of the State Auditor, *Tax Increment Financing Legislative Report*, at 3 (Jan. 9, 2023), https://www.osa.state.mn.us/media/f12hihdy/tiflegislative_21_report.pdf (last accessed June 22, 2023).

net tax capacity is akin to the original tax base in the district calculated before the start of a new development project. That calculation is used as a baseline figure for subsequent tax revenue comparisons calculated after a development project is complete. Minn. Stat. § 469.177, subd. 1. Thereafter, any tax revenues exceeding the baseline figure are considered the "captured net tax capacity," which is the incremental increase in tax revenue above the baseline that is attributable to the increased property value from new development. Minn. Stat. § 469.174, subd. 4. The local government then segregates the captured net tax capacity from the budgetary spending pot that generally consists of all other collected property tax revenues. Minn. Stat. § 469.177, subd. 5. That captured net tax capacity is then taxed, and the resulting tax revenues are earmarked to pay or reimburse project developers for certain development project costs. *Id.*, subd. 3. The tax revenue derived from the captured net tax capacity is the TIF amount.

To the taxpayer, in contrast, TIF is infinitely simpler. It is simply part of the property tax paid. It is not an additional fee or tax to be paid for property improvement. The taxpayer pays the full property tax, TIF included.

III.     The Commercial Lease Agreement in Dispute

Defendant Miracle Market LLC ("Landlord") applied for and received TIF from the City of Rochester, Minnesota to develop a 107-unit apartment building with approximately 36,000 square feet of ground level commercial and retail space ("Landlord Parcel").

Plaintiff Lakes Venture, LLC ("Tenant") subsequently signed a commercial lease with Landlord under which Tenant agreed to pay a percentage of the Landlord Parcel's

real estate taxes. (Doc. No. 1-1 at 11.) The lease expressly defines "Real Estate Taxes" broadly but carves out the following exception:

> Real Estate Taxes will not include any of the following: (i) *any assessments* or impact fees for highway, street or traffic control improvements, sanitary or storm sewers, utilities, adjacent roads and stoplights, *or for other on-site or off-site improvements of any nature whatsoever made in connection with the development of the Landlord Parcel* . . . .

(*Id*. (emphasis added).)

On cross-motions for summary judgment, both sides agree that Tenant is required to pay a percentage of real property taxes under the lease. It is also undisputed that the leased property is in a TIF District on a parcel that has been developed using TIF. Where the parties disagree, however, is whether the definition of "Real Estate Taxes," to which Tenant's percentage is applied, should exclude the annual TIF amount as an "assessment" for improvements under the lease made in connection with the development of the Landlord parcel.

## ANALYSIS

"Under Minnesota law, general principles of contract construction apply to commercial leases." *Fortune Funding, LLC v. Ceridian Corp.*, 368 F.3d 985, 987 (8th Cir. 2004) (citing *Carlson Real Estate Co. v. Soltan*, 549 N.W.2d 376, 379 (Minn. App. 1996)). This application requires giving effect to the parties' intent as expressed in the lease's language and construing that language according to its "commonly accepted meaning." *Id*. (quoting *Pettit Grain & Potato Co. v. N. Pac. Ry. Co.*, 35 N.W.2d 127, 130 (Minn. 1948)). Even plain and ordinary language must still be construed in the context of the entire contract. *Quade v. Secura Ins.*, 814 N.W.2d 703, 705 (Minn. 2012).

4

Additionally, courts must give effect to all contract provisions if possible and avoid an interpretation that renders a clause meaningless. *Fortune Funding*, 368 F.3d at 987 (citing *Oleson v. Bergwell*, 283 N.W. 770, 772–73 (Minn. 1939)).

Here, it is undisputed that relevant tax statements for the Landlord Parcel contain no amounts charged under the "special assessment" line item. Tenant contends that the absence of a special assessment is not determinative of whether TIF is an "assessment" under the lease. Tenant asserts that TIF is an "assessment," and not a special assessment, in the language of the lease because TIF is mathematically calculated or assessed for property improvement. Tenant concludes it should not be obligated to pay such an assessed value or "assessment."

The Court finds that defining "assessment" so broadly as to mean "calculation" or "valuation" is an unreasonably broad reading. Virtually all monies due and owing under the lease are calculations or assessments of some sort, from rent to property taxes, and such an expansive interpretation would effectively undo critical tenant obligations in the lease. Further, whether "assessment" means anything different from "special assessment" in the context of the entire agreement is questionable.

Reasonable construction of the term "assessment," in the context of the entire lease agreement, is an additional fee or levy that is separate from the property tax. And it is that construction of "assessment" that should end this disagreement. Here, the context of the relevant lease provision containing the term "assessment" includes examples that qualify as "special assessments" under Minn. Stat. Ch. 429, such as "impact fees for highway, street or traffic control improvements, sanitary or storm sewers, utilities,

5

adjacent roads and stoplights." (Doc. No. 1-1 at 11.); *see also* Minn. Stat. § 429.021. Each example of an assessment represents *additional* taxes earmarked for a specific improvement, separate from property taxes. By contrast, TIF is simply a portion of the net property taxes. It is not an additional assessment for improvements, but rather, is a financing tool and value derived from the appreciation of the property after development.

Accordingly, the Court concludes that TIF is not an "assessment" on real property and TIF does not reduce Tenant's share of property taxes under the lease. Therefore, under the unambiguous terms of the lease, Tenant is liable for the percentage of property taxes assessed against the Landlord Parcel, including the portion identified as TIF.

## ORDER

**IT IS HEREBY ORDERED** that:

1. Defendant Miracle Market LLC's Motion for Summary Judgment (Doc. No. 44) is **GRANTED**;

2. Plaintiff Lakes Venture, LLC's Motion for Summary Judgment (Doc. No. 52) is **DENIED**; and

3. This matter is **DISMISSED WITH PREJUDICE** on the merits.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: June 26, 2023                                *s/ Jerry W. Blackwell*
                                                    JERRY W. BLACKWELL
                                                    United States District Judge